**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARVIN LEIGH MADKINS,

               Petitioner,

vs.                                    Case No.       3:11-cv-949-J-34MCR
                                                          3:08-cr-343-J-34MCR

UNITED STATES OF AMERICA,

               Respondent.

_____

## <u>ORDER</u>

This case is before the Court on Petitioner Marvin Leigh Madkins's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255, (Doc. 1, Motion to Vacate)[1], filed on September 19, 2011, as well as his Memorandum of Law in Support of the Motion to Vacate, Set Aside, or Correct Sentence, (Doc. 14, Supporting Memorandum), filed on May 3, 2012.   The United States filed its Response to the Motion to Vacate on April 19, 2013, (Doc. 20, Government's Response), and Madkins filed a Reply to the Government's Response on May 23, 2013, (Doc. 25, Reply).   Accordingly, the Motion to Vacate is ripe for the Court's consideration.

---

[1] Citations to Madkins's criminal case file, <u>United States of America v. Marvin Leigh Madkins</u>, 3:08-cr-343-J-34MCR, are denoted as "Crim. Doc.___." Citations to Madkins's civil § 2255 case file, 3:11-cv-949-J-34MCR, are denoted as "Doc. ___."

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action.  See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (indicating that an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

For the reasons set forth below, the Motion to Vacate is due to be denied.

---

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

## I.      Background

On September 24, 2008, a grand jury sitting in the Middle District of Florida returned an indictment charging Marvin Leigh Madkins with two counts of transporting a minor for commercial sex acts through the use of force, fraud, or coercion, in violation of 18 U.S.C. § 1591; one count of transporting a minor with the intent to have the minor engage in prostitution or another criminal sex act, in violation of 18 U.S.C. § 2423(a); and one count of possessing a firearm in furtherance of a violation of 18 U.S.C. § 1591, in violation of 18 U.S.C. § 924(c)(1)(A).  (Crim. Doc. 1, Indictment).  Madkins proceeded to trial before a jury beginning on March 2, 2009.  (Crim. Doc. 89, Trial Tr. Vol. I).

Two victims, A.L. and M.M., testified that they met Madkins in Virginia when they were 16 years old and 15 years old, respectively.  (Crim. Doc. 90, Trial Tr. Vol. II at 15-16, 22-23, 210).  Madkins (who was then 28 years old) spent time socializing with A.L. and M.M., during which time Madkins supplied the minors with marijuana.  Id. at 22-23, 134.  Madkins was aware that A.L. was 16 years old because shortly after meeting her, A.L. told Madkins her age.  Id. at 15-16.  Madkins nevertheless told A.L. "I want to f*** the s*** out of you."  Id. at 16-17.

Madkins led A.L. and M.M. to believe that he was a wealthy drug dealer, portraying himself as such, driving a silver BMW, wearing nice jewelry, and frequently showing off pictures of himself holding fans of cash.  PSR ¶ 10; Trial Tr. Vol. II at 17, 185-87, 211; Gov't Ex. 1.  After a short time, Madkins convinced A.L. to run away from home, as M.M. had already done, and told A.L. to leave her cell phone behind so as not to give her mother a way to find her.  Trial Tr. Vol. II at 27-28.   Madkins told the girls

3

that he planned to become a cocaine dealer in Florida, and that if the girls came with him to Florida they would live off the proceeds of Madkins's cocaine business and "just have fun," go to the beach, and go shopping.  Id. at 23-24, 106, 111, 194.  But, there was a catch: in order to have the money to get from Virginia to Florida, the girls would have to become prostitutes.  PSR ¶ 14; Trial Tr. Vol. II at 23-24, 30, 107-08, 135-37, 190.

Madkins introduced A.L. and M.M. to prostitution, teaching them how to make money by selling sex.  Id. at 24, 137.  He taught the minors about prostitution and set up rules for them to follow.  For example, Madkins told the minors how to ensure that their customers were not police officers, instructed the minors what prices to charge, told the minors to use condoms, directed the minors as to what sex acts to perform or not to perform; and told the minors to use fictitious names, lie about their ages, and tell their customers that they were students at a nearby college.  Id. at 31-37.  A.L. and M.M. testified that Madkins set up hotel rooms around the Norfolk, Virginia area for the girls to use for prostitution.  Id. at 138-41, 145-46.  According to A.L. and M.M., Madkins took between 40% and 60% of their earnings.  Id. at 36, 158.  M.M. also testified that she would overcharge customers, and hide the extra cash from Madkins, in order to have money if she needed to flee.  Id. at 159-60.

M.M. testified that Madkins advertised her and A.L. on Craig's List in order to attract more customers.  Id. at 146.  Madkins posted naked pictures of the girls on the site, leading the girls to receive four to five clients a day.  Id. at 49.  One witness, Delicia

4

Lawrence, testified that Madkins told her "he was playing [the girls] on an escort service, and everybody knows what that's code for, escort service." Id. at 241.

Madkins led the girls to believe that once they reached Florida, they could live off the profits of his successful drug business and discontinue being prostitutes. Id. at 23-24, 194. A.L. and M.M. believed this story, testifying that they would never have gone to Florida with Madkins if they had known that Madkins would continue prostituting them in Florida. Id. at 26, 58, 110, 152, 199. However, in a recorded phone conversation, Madkins acknowledged telling his high school girlfriend, Sherri Majette, that he was "going to try to go down to Florida and work some whores out of here[.]" (Crim. Doc. 91, Trial Tr. Vol. III at 182).

After saving enough money from the minors' prostitution, Madkins bought Greyhound bus tickets for himself and the two minors to travel to Florida. Trial Tr. Vol. II at 152-53. Madkins used fake names for A.L.'s and M.M.'s bus tickets to conceal their ages and identities. Id. at 53, 152-53. He then accompanied the minors on the bus ride from Virginia to Jacksonville, Florida. When they arrived in Jacksonville, the group initially stayed with a friend of Madkins's. When A.L. let it slip that she was 16 and M.M. was 15, Madkins's friend ordered the three out of his apartment. Trial Tr. Vol. I at 58-60, 154-55. Because the three were low on money and needed a hotel, Madkins told A.L. and M.M. to resume prostitution. Id. at 62, 155-57. Once again, Madkins advertised A.L. and M.M. via Craig's List, which drew five to six customers per day. Id. at 60-62. The girls testified that Madkins required them to have sex with clients in order to avoid losing business, even when the girls just wanted to sleep. Id. at 66.

5

Police officers ultimately discovered A.L. and M.M. at a Ramada Inn in Jacksonville, Florida after a security guard became suspicious upon seeing men streaming into and out of a hotel room.  Trial Tr. Vol. III at 35-37, 51, 87-88, 119.  In the hotel room where A.L. and M.M. were staying with Madkins, police located pornographic movies, photographs of Madkins exposing his genitals, and "stripper clothes."  Trial Tr. Vol. II at 87, 175; Trial Tr. Vol. III at 90-93, 109-13, 120-21; Crim. Doc. 92, Trial Tr. Vol. IV at 14-15.  Additionally, one officer testified that A.L. and M.M. appeared sickly.  Trial Tr. Vol. III at 150.

During the trial, A.L. and M.M. testified about instances where Madkins became violent or abusive toward them.  A.L. testified that she once saw Madkins push M.M. to the ground because M.M. left the group's hotel room with the cell phone at a time when A.L. was to receive a client.  Id. at 66-67.  A.L. also testified that Madkins once held her down in a chair for 20 minutes because A.L. would not speak to or look at Madkins.  Id. at 68-69.  M.M. testified that Madkins once choked her and pushed her to the ground for having an attitude.  Id. at 163-64.  On another occasion, M.M. became sick but Madkins would not allow her to go to the doctor because he feared that law enforcement would catch them if M.M. sought medical attention.  Id. at 178.  Both A.L. and M.M. testified that Madkins also had sex with each of them, in both Florida and Virginia.  Id. at 20, 51-52, 80-82, 126, 143-44, 165.

At trial, the government introduced evidence that Madkins attempted to manipulate the witnesses' testimony.  Madkins's friend, Majette testified that she received correspondence from Madkins in which Madkins stated that, with her help, he

could "beat the two pimp cases" and the firearm charge, and could probably beat the "crossing state lines" charge.  Trial Tr. Vol. III at 191.  Madkins urged Majette to contact A.L. in order to get her to change her testimony.  Id. at 191-92.  In correspondence dated October 29, 2008, Madkins stated the following to Majette:

> Look, as is, I got two pimp cases, one pimping across state lines and a gun case.  I can beat the two pimp cases.  I can beat the gun case.  The crossing state lines might be difficult, but there's a good chance I'll be able to handle it….
>
> First, be careful about how you speak in the letters and on the phone.  They listen on the phone here, and they might try to use it against me.  So one, call [A.L.].  At least try her number is 271-4136.  If that don't work, find her MySpace, go to friend find, search whatever it's called on MySpace.  Her name is [****].  Leave her a message.  Tell her I told the feds I met her at the bus station in Norfolk.  They do not know what went on VA.  If they find out what happens in VA, that's life B/C… I took them across state lines, tell her it's imperative to call or write.  This s*** is important.  She needs to know that.  Tell her to call Kelly at (904) 275-2806.  Matter of fact, just MySpace her, and say I said to call that number.  He'll tell her everything she need to know.  Kelly is a dude.

Id.

At the conclusion of the trial, the jury convicted Madkins of transporting a minor for commercial sex acts through the use of force, fraud, or coercion, as charged in Counts One and Two, as well as transporting a minor with the intent to have the minor engage in prostitution or another criminal sex act, as charged in Count Three.  (Crim. Doc. 68, Jury Verdict; Crim. Doc. 93, Trial Tr. Vol. V at 72-73).  However, the jury acquitted Madkins of the charge of possessing a gun in furtherance of a violation of 18 U.S.C. § 1591 (Count Four).  Id. at 73-74.

Following a lengthy sentencing hearing, the Court sentenced Madkins on December 2, 2009, to a term of imprisonment of 600 months. (Crim. Doc. 87, Amended Judgment). According to Madkins's Presentence Report (PSR), the crimes called for a base offense level of 34 under the United States Sentencing Guidelines ("Sentencing Guidelines"). PSR ¶ 47. Madkins received five upward adjustments to his offense level: (1) a two-level increase for unduly influencing a minor pursuant to U.S.S.G. § 2G1.3(b)(2)(B); (2) a two-level increase for the use of a computer or interactive computer service to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor" pursuant to U.S.S.G. § 2G1.3(b)(3)(B); (3) a two-level increase for commission of a sex act or sexual contact pursuant to U.S.S.G. § 2G1.3(b)(4); (4) a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1, and (5) a two-level multiple-count upward adjustment pursuant to U.S.S.G. § 3D1.4, resulting in a total offense level of 44. PSR ¶¶ 47-70. Additionally, the Court determined Madkins qualified as a career offender for sentencing pursuant to U.S.S.G. § 4B1.2. Because Madkins fell into Criminal History Category VI, his advisory Sentencing Guidelines range recommended life in prison. While the Court observed that Madkins richly deserved a life sentence, the Court nevertheless determined that the 50-year sentence imposed accomplished all of the statutory purposes of sentencing. (Crim. Doc. 96, Sentencing Tr. At 52-53). In doing so, this Court explained that Madkins deserved a 50-year sentence on account of his manipulative and predatorial conduct toward A.L. and M.M., the irreparable harm he had caused to the girls and their families,

his criminal history, and his attempt to suborn perjury, among other factors.  Id. at 49-54.

Madkins appealed his sentence to the Eleventh Circuit Court of Appeals, raising two issues: (1) that the Court erred in applying a two-level enhancement for unduly influencing a minor to engage in prohibited sexual conduct pursuant to U.S.S.G. § 2G1.3(b)(2)(B), and (2) that the Court plainly erred in applying a two-level enhancement for using a computer to entice, encourage, or solicit persons to engage in prohibited sexual conduct with minors pursuant to U.S.S.G. § 2G1.3(b)(3)(B).  United States v. Madkins, 390 F. App'x 849, 850 (11th Cir. 2010).  As to the adjustment for unduly influencing a minor, the Eleventh Circuit explained that U.S.S.G. § 2G1.3(b)(2)(B) provides for a rebuttable presumption of undue influence where the defendant is at least 10 years older than the victim, as here, but that Madkins had shown nothing to rebut that presumption other than to argue that the minors chose to engage in prostitution for monetary gain.  Id. at 850-51.  As to the increase for using a computer to solicit persons to engage minors in prohibited sexual conduct, the Eleventh Circuit explained that Madkins failed to demonstrate plain error because he failed to show that his substantial rights were affected.  Id. at 852.  The court explained that Madkins qualified for a 50-year sentence with or without the computer enhancement, and that there was nothing in the record to suggest that the trial court would have sentenced him any differently even without the enhancement  Id.  Thus, the court affirmed Madkins's conviction and sentence.  Id.

Madkins did not seek certiorari review by the Supreme Court. Therefore, his conviction and sentence became final upon the expiration of the 90-day period for filing a petition for a writ of certiorari. Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) (conviction becomes "final" for purposes of 28 U.S.C. § 2255 at the expiration of the 90-day period for filing a petition seeking certiorari review where petitioner does not request the writ); see also Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012) (interpreting an identical statute of limitations applicable to 28 U.S.C § 2254, holding conviction becomes "final" at the expiration of the 90-day period for seeking a writ of certiorari). Madkins's conviction and sentence thus became final on October 29, 2011, from which date Madkins had one year to apply for habeas corpus relief. 28 U.S.C. 2255(f)(1). Madkins filed his Motion to Vacate on September 19, 2011, and the Motion to Vacate is therefore timely.

## II.    Opinion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S.

178, 184-86 (1979).   A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994).   In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance.  Weeks, 26 F.3d at 1036.   The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance."  Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  Id. at 1036-37 (citing Strickland, 466 U.S. at 694).   In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence.  Strickland, 466 U.S. at 695.  However, because both prongs are necessary, "there is no reason for a court … to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's]

ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Procedurally Barred Claims

#### 1. Claims Raised and Decided on Direct Appeal: Grounds Fifteen and Sixteen

The claims Madkins raises in grounds fifteen and sixteen, challenging the Court's application of enhancements to Madkins's advisory Sentencing Guidelines range for unduly influencing a minor and the use of a computer, were raised and decided on direct appeal. See Madkins, 390 F. App'x at 850-52. Notably, the Eleventh Circuit has specifically held "[i]t is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that we rejected in his direct appeal." Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014). As such, Madkins is procedurally barred from raising these claims in his Motion to Vacate. Indeed, "[o]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be relitigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); see also Buckelew v. United States, 575 F.2d 515, 517-18 (5th Cir. 1978) ("[a] matter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal."). Therefore, because the Eleventh Circuit Court of Appeals addressed these issues on the merits and affirmed Madkins's sentence, see Madkins, 390 F. App'x at 850-52, Madkins's claims as to these issues are procedurally barred.

**2. Claims available on direct appeal but not raised:  Grounds Seventeen, Eighteen, and Nineteen, and Madkins's challenge to the Court's calculation of his offense level under the Sentencing Guidelines.**

The claims Madkins raises in grounds seventeen, eighteen, and nineteen – that the Court erred in applying the obstruction of justice enhancement; that the Court incorrectly sentenced Madkins as a career offender; and that the Court imposed an unreasonably high sentence, respectively – could have been raised on direct appeal, as could the claim presented at pages 41-43 of his Supporting Memorandum that the Court miscalculated his offense level under the Sentencing Guidelines.  See Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (an issue is "available" on direct appeal when "its merits can be reviewed without further factual development") (citations omitted).  However, Madkins raised none of these claims in his appeal.

Issues that a petitioner could have raised on direct appeal, but failed to raise, are procedurally barred from review in a § 2255 motion.  Lynn, 365 F.3d at 1234; see also United States v. Frady, 456 U.S. 152, 165 (1982) ("[A] collateral challenge may not do service for an appeal.").  Nevertheless, a petitioner can overcome a procedural default by showing cause for and prejudice from the default.  Lynn, 365 F.3d at 1234-35.  In order to establish cause for a procedural default, a habeas petitioner must point to an objective factor, not attributable to the petitioner, that prevented him from raising the claim earlier.  Id.  To show prejudice, the petitioner must demonstrate that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Frady, 456 U.S. at 170 (emphasis in original). Demonstrating prejudice requires a petitioner to show a reasonable probability of a

different outcome absent the alleged error.  Id. at 172.  In appropriate circumstances, the ineffective assistance of counsel may support a finding of cause for and prejudice from a failure to raise a claim such that the procedural default would be excused. Murray v. Carrier, 477 U.S. 478, 488 (1986).  In the absence of a showing of cause and prejudice, a petitioner can only avoid a procedural default by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234.[4]

Although the claims in grounds seventeen, eighteen, and nineteen, as well as the challenge to the Court's calculation of Madkins's offense level under the advisory Sentencing Guidelines, were not raised on direct appeal, they could have been raised along with Madkins's other two Sentencing Guidelines challenges.  Thus, Madkins has procedurally defaulted these claims.  Upon review of the record, the Court further determines that Madkins has failed to show cause for and prejudice from the default. Indeed, Madkins makes no attempt to show that he was prevented from raising the claims and has shown neither that appellate counsel performed deficiently in not raising the claims on appeal, nor that the failure to raise them resulted in any prejudice.

---

[4] Because there is no evidence to support a finding of actual innocence, the Court will only analyze the cause-and-prejudice exception for procedurally defaulted claims.  See Lynn, 365 F.3d at 1235.

### a.  Ground Seventeen

While it is true that Madkins's appellate counsel did not challenge the obstruction-of-justice enhancement, any such challenge would have been meritless. Sherri Majette's trial testimony showed that Madkins tried to get her to persuade A.L. to change her testimony.  Trial Tr. Vol. III at 191-92.  Madkins directed Majette to call A.L. or send her a MySpace message in order to tell A.L. what to say or not to say to investigators.  Id.  Madkins even gave Majette A.L.'s phone number and a way to track her down on MySpace.  Id. at 191.  Although Madkins ultimately failed to convince A.L to misinform law enforcement or to alter her testimony, the fact that he did not succeed is irrelevant for purposes of applying U.S.S.G. § 3C1.1.  The mere attempt to obstruct justice is sufficient.  U.S.S.G. § 3C1.1 (enhancement applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction…") (emphasis added).  Moreover, the Sentencing Guidelines commentary expressly states that attempting to suborn perjury constitutes obstruction of justice. U.S.S.G. § 3C1.1, Application Note 4(b).  As Madkins's counsel had no viable argument to challenge the obstruction-of-justice enhancement, Madkins has failed to show prejudice and ground seventeen is procedurally defaulted.

### b.  Ground Eighteen

Madkins's claim that the Court wrongly designated him as a career offender under the Sentencing Guidelines similarly lacks merit.  First, Madkins contends that the Court should not have considered his prior conviction – obtained pursuant to a guilty

15

plea – for conspiracy to commit aggravated escape from custody when designating him as a career offender.  Supporting Memorandum at 35-36.  Not only is this Court not the appropriate forum to challenge a prior conviction unrelated to the instant case, but Madkins has provided no grounds to suggest why the Court should have disregarded a previous conviction obtained pursuant to a guilty plea.  Moreover, Madkins's trial counsel did not provide ineffective assistance by not challenging the prior conviction, because a sentencing court cannot ignore or discount a prior conviction that has not been invalidated in a prior proceeding unless there was an unwaived absence of counsel in the proceedings resulting in that conviction.  United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997).  Here, Madkins does not allege that he pled guilty to conspiracy to commit aggravated escape from custody with the unwaived absence of counsel.

Second, Madkins argues that the Court erred in designating him as a career offender under the advisory Sentencing Guidelines because the instant offenses of conviction were not "crimes of violence" for purposes of U.S.S.G. § 4B1.1(a)(2).  This argument also lacks merit.  Although the Eleventh Circuit has not directly addressed the issue, several Circuit Courts of Appeals have cogently reasoned that a violation of either 18 U.S.C. § 1591 or § 2423 constitutes a crime of violence because of the inherent risk of harm posed to a minor from prostitution, such as sexually transmitted diseases and a violent clientele.  United States v. Curtis, 481 F.3d 836, 838-39 (D.C. Cir. 2007) (promoting the prostitution of a minor inherently presents a serious potential risk of injury to the minor);  United States v. Willoughby, 742 F.3d 229, 242 (6th Cir. 2014)

16

(causing a minor to engage in prostitution – even when the defendant's act does not itself involve force – presents a serious potential risk of physical injury to the victim; thus a violation of 18 U.S.C. § 1591 qualifies as a crime of violence for purposes of § 4B1.2(a)(2) of the Sentencing Guidelines); United States v. Williams, 529 F.3d 1, 7-8 (1st Cir. 2008) (interstate transport of a minor for prostitution is categorically a "crime of violence" for purposes of the career offender Sentencing Guidelines, in that it involves purposeful and aggressive conduct that presents serious potential risks of physical injury); United States v. Patterson, 576 F.3d 431, 439-42 (7th Cir. 2009) (transporting a minor in interstate commerce with intent that the minor engage in prostitution, in violation of 18 U.S.C. § 2423(a), is a "crime of violence" under the Sentencing Guidelines, permitting a defendant convicted of the crime to be sentenced as a career offender for the instant conviction in light of the risk of violence attending the crime).  An appellate lawyer does not provide ineffective assistance by deciding not to raise a meritless or frivolous issue.  See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).  As such, Madkins has failed to show either cause or prejudice related to appellate counsel's decision to not raise this issue on appeal.

### c.  Ground Nineteen

Madkins's claim that his sentence was unreasonably high could have been raised on appeal, but was not.[5]  Madkins has shown neither cause for nor prejudice

---

[5] The Eleventh Circuit did, however, affirm Madkins's sentence on direct appeal.  Madkins, 390 F. App'x at 852.  Madkins's challenge to the reasonableness of his sentence is therefore arguably procedurally barred by the Eleventh Circuit's opinion.  However, because Madkins frames the challenge to his

from the alleged error to excuse the procedural default of this claim.  Indeed, appellate counsel did not render ineffective assistance by not raising the issue on direct appeal because the claim lacked merit as a matter of law.

A Court of Appeals will review a sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard.  Gall v. United States, 552 U.S. 38, 51 (2007).  Procedural reasonableness means that the sentencing court properly calculated the Sentencing Guidelines range, treated the United States Sentencing Guidelines as advisory, considered the 18 U.S.C. § 3553(a) factors, did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence.  Id.  It is sufficient that a court states that it considered the parties' arguments and the § 3553(a) factors.  See United States v. Irey, 612 F.3d 1160, 1195 (11th Cir. 2010).  Substantive reasonableness is presumed unless a Court of Appeals is left with the definite and firm conviction that the sentencing court committed a clear error in judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.  United States v. Bonannee, ___ F. App'x ____, 2014 WL 3511635 *4 (11th Cir. 2014) (citing Irey, 612 F.3d at 1190); see also United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010) (the party challenging the sentence has the burden of demonstrating unreasonableness).

---

sentence on collateral review differently from how he framed his attack on direct appeal, the Court will address this claim out of an abundance of caution.

Given the highly deferential standard of review in assessing the reasonableness of a sentence, it was not unreasonable for appellate counsel to winnow this issue out of Madkins's appeal in order to focus on other arguments.   Appellate counsel is not required to raise "every colorable issue" because that "runs the risk of burying good arguments." Jones v. Barnes, 463 U.S. 745, 753 (1983).   Accordingly, Madkins has failed to show that appellate counsel's decision to not raise this issue was so professionally unreasonable as to demonstrate cause for procedurally defaulting this claim. McCleskey v. Zant, 499 U.S. 467, 494 (1991) ("Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.").   Madkins does not point to anything else that would constitute cause for the default.

More importantly, this claim simply lacks merit.   The Court explained at sentencing that it considered both parties' arguments, the § 3553(a) sentencing factors, and the advisory nature of the Sentencing Guidelines pursuant to United States v. Booker, and found that Madkins's conduct warranted a 50-year sentence.   Sentencing Tr. at 49, 53.   The Court explained that Madkins deserved a 50-year sentence because of his criminal history, the irreparable harm he had caused A.L., M.M., and their families, his manipulative and predatorial conduct toward the two underage victims, and his attempt to obstruct justice through subornation of perjury.   Id. at 49-54.   The 50-year sentence fell within the range prescribed by 18 U.S.C. § 1591(b)(1), which provides for a sentence of 15 years and up to life in prison.   The sentence also fell below the advisory Sentencing Guidelines range, which suggested life in prison after

enhancements.  See Madkins, 390 F. App'x at 851.  Thus, Madkins has failed to show how his sentence was either procedurally or substantively unreasonable.   Because Madkins has failed to show that the sentence was unreasonable, he has also failed to demonstrate either cause for defaulting the claim, i.e., that counsel was professionally unreasonable in not raising a meritless issue on appeal, or that he suffered prejudice therefrom.

### d.  The Court's calculation of Madkins's offense level

Not having been raised in his direct appeal, Madkins's challenge to the Court's calculation of his base offense level is procedurally barred.  Madkins has failed to point to any basis for a finding of cause for his failure to raise the claim, and upon review, he cannot establish prejudice.

Any challenge to the Court's calculation of Madkins's offense level would have lacked merit.  The jury convicted Madkins on two counts of transporting a minor to commit commercial sex acts through the use of fraud or coercion, in violation of 18 U.S.C. § 1591.  Jury Verdict at 1-2.  Each count had a base offense level of 34.  Brief of Appellant Madkins, 2010 WL 4057775 at *13; U.S.S.G. § 2G1.3(a).   Because each count involved a different victim, they qualified to be treated as separate "groups" under the Sentencing Guidelines.  U.S.S.G. § 3D1.2.  In order to receive a two-offense-level multiple-count increase under the Sentencing Guidelines, a court looks at the "group" with the highest offense level, and then at the offense level of any other "groups."  See U.S.S.G. § 3D1.4. If the highest offense level of each "group" is the same or within four offense levels of the other, each group may count as one "unit."  Id. Because Madkins

had two "groups" with the same offense level of 34 – one "group" for each victim – Madkins had two "units," thereby qualifying for the two-level multiple count increase under U.S.S.G. § 3D1.4.   Madkins did not challenge the Sentencing Guidelines enhancement for committing a sex act or sexual contact pursuant to U.S.S.G. § 2G1.3(b)(4), and the Court has already determined that the other three Sentencing Guidelines enhancements were proper.   As such, Madkins's base offense level and each of the five upward adjustments were appropriate.   Any appeal on this issue would have lacked merit, and thus Madkins has failed to show prejudice from his counsel's failure to raise the issue.   See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (appellate counsel is not ineffective for not raising a meritless issue).

### B. Claims Not Procedurally Barred

Because the United States and Madkins treat the following grounds as quintessential ineffective assistance of counsel claims that are not procedurally barred, the Court will turn to the merits of the remaining claims.

### 1. Ground One:   Ineffective assistance for not moving to suppress evidence derived from police officers' search of his hotel room

Madkins contends that trial counsel provided ineffective assistance by failing to move to suppress evidence derived from a search of his hotel room in Jacksonville, Florida.   To succeed on a claim that an attorney failed to provide effective assistance with regard to a Fourth Amendment motion to suppress, a petitioner must show that the underlying Fourth Amendment claim had merit.   Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).   Because Madkins cannot do so, his claim in ground one fails.

Officers first encountered A.L. and M.M. in Jacksonville after a "knock and talk," an investigative procedure that requires neither a warrant nor probable cause.  See United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006) ("The Fourth Amendment… is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises."); see also United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1991) (no warrant necessary for officers to approach a house to speak with the occupants).  The "knock and talk" exception exists "absent express orders from the person in possession."  Taylor, 458 F.3d at 1204 (citing Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964)).  Here, Madkins points to no indication that the hotel room's occupants did not welcome visitors, such as by posting a "Do Not Disturb" sign.  In fact, it was the large number of visitors entering and leaving the hotel room that first attracted a security guard's attention, prompting him to contact the police.  As Madkins presents no evidence that visitors were unwelcome, the "knock and talk" by Jacksonville Sheriff's Office patrolmen was lawful.

When an officer[6] knocked on the hotel room door, one of the girls answered.  Officers observed M.M. in the room along with another girl, "Alma," whom the officers knew, from previous encounters, to be 15 years old.[7]  Trial Tr. Vol. III at 89.  The officers also noticed pornographic DVD's sitting out in plain view.  Id. at 90.  Based on their

---

[6] Madkins disputes whether it was a police officer or security officer who knocked on the hotel room door.  Either way it is irrelevant for the purpose of this discussion.
[7] When the officers arrived, A.L. was in another room with a man by the name of Daniel Lash – a registered sex offender.  Trial Tr. Vol. II at 96-97, 175; Trial Tr. Vol. III at 37-38, 47, 53, 90, 119-20; PSR ¶¶ 22-23.

observations, the officers had probable cause to suspect a violation of Florida Statute section 847.013, which makes it a first degree misdemeanor to expose a minor to motion pictures depicting nudity or sexual conduct.  F.S. § 847.013(3).  The officers then entered the hotel room with no objection from the occupants.  Because the officers knew that men had been streaming into and out of the hotel room, that at least one of the females was underage, and that pornography was in the room, the officers had probable cause to suspect criminal activity, and had authority to enter the hotel, at a minimum, under exigent circumstances to prevent the destruction of evidence – specifically, the pornographic movies.  See United States v. Forker, 928 F.2d 365, 369-70 (11th Cir. 1991) (the need to prevent the destruction of evidence is an exigent circumstance justifying the warrantless entry into a hotel room).  Thus, Madkins has failed to identify a Fourth Amendment violation with regard to the evidence obtained from his Jacksonville hotel room.[8]

As Madkins's Fourth Amendment challenge lacks merit, counsel did not render ineffective assistance in choosing not to pursue a meritless motion to suppress.  See Kimmelman, 477 U.S. at 375; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (crediting as professionally reasonable counsel's decision not to file what he believed to be a meritless motion).

---

[8] Even if Madkins had been able to point to a Fourth Amendment violation, the Court questions whether he could have established his standing to present such a challenge.  Indeed, because Madkins's connection to the hotel room appears to have been exclusively commercial, he likely lacked an expectation of privacy.  United States v. Cooper, 203 F.3d 1279, 1285 n. 3 (11th Cir. 2000) (even overnight guests lack an expectation of privacy where they are using a hotel room primarily for commercial purposes such as narcotics trafficking).

**2.  Ground Two:  Ineffective assistance of counsel at jury selection**

**a.   Ineffective use of peremptory and for-cause challenges.**

Madkins contends that trial counsel rendered ineffective assistance either by failing to exclude a biased juror, or for wasting peremptory challenges on venire members who were allegedly so biased such that they could have been excluded for cause.  Because each potential juror Madkins identifies either was excluded or could not have been challenged for cause, this claim lacks merit.

First, Madkins argues that counsel provided ineffective assistance because they did not strike Juror 11 for cause.[9]  Juror 11 stated that he "honestly" did not believe he could render an impartial verdict if selected as a juror.  Trial Tr. Vol. I at 79-80, 135-36.  The record shows that the government, in fact, moved to strike Juror 11 for cause on account of this statement.  Id. at 135-36.  Defense counsel did not object.  Id. at 136.  As the Court struck Juror 11, this claim is factually meritless, and no prejudice resulted.

Second, Madkins asserts that counsel was ineffective because they allegedly allowed two biased jurors, Jurors 25 and 32, to be empaneled.  Madkins argues Juror

_____

[9] Madkins misidentifies Juror 11, Juror Williams, as Juror 21, Juror McKay, in his Motion to Vacate and Supporting Memorandum.  While Madkins refers to Juror 21 (McKay) as the venire member who said he did not think he could render an honest verdict, it was actually Juror 11 (Williams) who made this statement.  The record reflects that it was Juror Williams who thought he could not impartially render a verdict, and the government moved to strike him for cause.  Trial Tr. Vol. I at 135-36.  Madkins's confusion stems from the fact that the trial transcript itself incorrectly attributes the statement to Juror McKay.  See id. at 79-80.  However, it is clear that Juror McKay is not the one who stated he could not render an unbiased verdict. Earlier in jury selection, Juror 21 (McKay) stated that he worked for Bank of America in the anti-fraud department, id. at 41-42, but the person identified as Juror McKay in the transcript at pages 79-80 identified himself as a convenience store clerk.  Id. at 79-80.  The record reflects that there was some confusion in the courtroom between Juror 11 (Williams) and Juror 21 (McKay) as well, which explains Madkins's mistake.  Id. at 91-92, 96.

24

25 was biased solely because she had a 21-year old daughter attending school in the Norfolk, Virginia area where Madkins was from, and that Juror 32 was biased because he was a security guard at a hotel, and thus presumptively familiar with the prostitution business.  Not only did these jurors assure the Court that they could render a fair and impartial verdict, see Trial Tr. Vol. I at 92-93, but both allegations of bias are utterly speculative, conclusory, and unsupported by the record.  See Holmes v. United States, 876 F.2d 1545, 1552-53 (11th Cir. 1989) (unsupported generalizations do not require a hearing); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (a hearing is not required on conclusory allegations unsupported by specifics or contentions that are wholly unsupported by the record).  Indeed, Madkins points to no indication that counsel had good reason to challenge either Juror 25 or Juror 32 for cause, or that they rendered the jury panel biased.[10]  United States v. Dickerson, 248 F.3d 1036, 1045-46 (11th Cir. 2001) (finding fair support in the record that a juror could be fair and impartial because the juror made no statements revealing an inability to evaluate evidence in the light of a presumption of innocence).  Thus, this claim does not warrant relief.

Third, Madkins argues that trial counsel gave ineffective assistance by "wasting" a peremptory challenge on Juror 14, who briefly worked for Arizona Child Protective Services in 1994-1995.  Supporting Memorandum at 39; Trial Tr. Vol. I at 68.  Madkins states that counsel could have challenged Juror 14 for cause because of her child protection background, and then saved the peremptory challenge for other jurors.  This

---

[10]  The jury even acquitted Madkins on Count Four of the Indictment for possessing a firearm in furtherance of a violation of 18 U.S.C. § 1591.  Jury Verdict at 3.

claim lacks merit, as Juror 14's brief employment with child protective services, 14 years before this trial occurred, did not suggest any implied bias.  Moreover, Juror 14 assured the court that she could impartially render a verdict.  Trial Tr. Vol. I at 92-93.  Thus, counsel would not have succeeded in challenging this juror for cause even if they had tried.  And even if Juror 14 was biased, the fact that a defendant must use a peremptory strike, rather than a for-cause strike, to exclude a biased juror does not violate the defendant's constitutional rights so long as the jury that is ultimately empaneled is impartial.  United States v. Martinez-Salazar, 528 U.S. 304, 316-17 (2000).  Because Madkins has failed to show that the jury that was ultimately empaneled was biased against him, the fact that his attorneys used a peremptory strike to exclude Juror 14 rather than moving to strike the juror for cause does not establish that he was denied a fair trial – even if Juror 14 was biased.

For the foregoing reasons, Madkins has failed to demonstrate that counsel's performance in jury selection was either professionally deficient or prejudicial under Strickland.

### b.  Failure to make a Batson[11] challenge

Madkins also contends that trial counsel should have raised a Batson challenge to the government's exclusion of three African-American venire members.  Motion to Vacate at 8.  Notably, Madkins does not identify which jurors he is referring to, or even

---

[11] Batson v. Kentucky, 476 U.S. 79 (1986) (a prosecutor's use of peremptory challenges to exclude jurors solely on the basis of race violates a defendant's right to equal protection and constitutes fundamental error).

whether the allegedly African-American jurors were struck peremptorily or for cause. Moreover, neither trial counsel nor Madkins himself raised any objection to the jury composition at trial.  <u>See</u> Response at 18.

In order for Madkins to show that trial counsel could have made out a viable <u>Batson</u> challenge, he would have to meet the three-part test laid out in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986): (1) the party challenging the peremptory strike must establish a <u>prima facie</u> case of discrimination; (2) if the challenging party makes a <u>prima facie</u> case of discrimination, the burden shifts to the other party to articulate a non-discriminatory reason for the strike; and (3) if a non-discriminatory reason is offered, the party challenging the strike must prove that the peremptory challenge was purposefully used to discriminate.  A bare allegation that a certain number of jurors were removed, however, is not enough because the number must be put in context with things "such as the racial composition of the venire, the race of others struck, or the voir dire answers of those who were struck compared to the answers of those who were not struck."  <u>United States v. Ochoa-Vasquez</u>, 428 F.3d 1015, 1044 (11th Cir. 2005) (quotation and citation omitted).

Madkins has failed to even satisfy <u>Batson</u>'s first prong, i.e. demonstrating a <u>prima facie</u> case of discrimination, because he has not provided a sufficient context within which to evaluate the claim, such as the race of other jurors struck, or the voir dire answers of those struck compared with those not struck.  While the government used peremptory strikes on six jurors, Madkins has not identified which, if any, were African-American.  As a result, Madkins's <u>Batson</u> claim lacks merit, and the Court cannot say

27

that either trial counsel or appellate counsel were ineffective for not raising the issue. See Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999) (where the record is incomplete or unclear about counsel's actions, a court will presume that an attorney did what she should have done, and that she exercised reasonable professional judgment).

### 3. Ground Three: Ineffective assistance for presenting a "muddled and confused" defense

Madkins contends that his attorneys provided ineffective assistance by presenting only a brief opening statement, having a "muddled and confused" defense strategy without any "lawful or viable" defense, and for not calling certain witnesses, including a 15-year old prostitute named "Alma O.," whom Madkins believes would have given testimony proving Madkins was not a "pimp." Motion to Vacate at 9-10.

Trial attorneys should investigate "plausible lines of defense," Fortenberry v. Haley, 297 F.3d 1213, 1226 (11th Cir. 2002) (per curiam), but this duty does not require counsel to "investigate substantially all plausible lines of defense." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994). Intensive scrutiny and second-guessing of attorney performance is not permitted. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000). The evaluation of an attorney's conduct does not test "what the best criminal defense attorneys might have done," Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995), but whether a reasonable lawyer could have acted as defense counsel acted. Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004).

Notably, there is no requirement that defense counsel present any opening statement. See e.g., Messer v. Kemp, 760 F.2d 1080, 1090 (11th Cir. 1985); Williams

v. Beto, 354 F.2d 698, 703 (5th Cir. 1965) (making an opening statement is "a matter of professional judgment."). Here, defense counsel's opening statement, though succinct, foreshadowed for the jury inconsistencies in the witnesses' testimony and held the government to its burden of proof. Trial Tr. Vol. I at 212-13. Stating these two points concisely, rather than in a lengthy opening statement, is not a patently unreasonable trial strategy.

Throughout the trial, defense counsel vigorously cross-examined the government's witnesses, including A.L. and M.M. Counsel's strategy was to portray the two victims as troubled run-aways who gave inconsistent and conflicting testimony, and who voluntarily remained in Madkins's company and engaged in prostitution for monetary gain. See Trial Tr. Vol. II at 105-07, 113-16. Defense counsel also attempted to advance Madkins's argument that he was not a "pimp", see Supporting Memorandum at 19, by eliciting testimony about Madkins's destitution, including testimony that Madkins had no money and no car, id. at 104; was not a big-time drug-dealer; had no house, id. at 199; and did not stay at nice hotels. Id. at 185.

Nevertheless, Madkins was fighting uphill against overwhelming evidence, most notably the testimony from A.L., M.M., Sherri Majette, and Delicia Lawrence about how Madkins manipulated and abused A.L. and M.M., and how Madkins made plans to take the minors to Florida for the specific purpose of "work[ing] some whores out of here." Trial Tr. Vol. III at 182. In the face of this evidence, it certainly was not unreasonable trial strategy to focus on discrediting the witnesses. Indeed, Madkins fails to suggest any alternative viable strategy.

Madkins also faults his attorneys for not calling certain witnesses at trial. However, Madkins has not identified how any of these additional witnesses would have provided materially helpful or exculpatory testimony.  In attempting to show that counsel was ineffective in the decision to not call a witness, the burden of demonstrating prejudice is heavy because "often allegations of what a witness would have testified to are largely speculative."  Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (citing United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980) (the petitioner's word on what testimony the missing witnesses would have provided found insufficient to meet the petitioner's burden).   Here, Madkins insists that trial counsel should have called Alma O., a fifteen-year old girl who had been engaged in prostitution, as a witness. Motion to Vacate at 10.  Madkins thinks this witness would have proven Madkins was not a pimp, because Madkins had offered only his "guidance and assistance" to Alma O. without taking any money from her.[12]  Id.  However, Alma O.'s presence actually may have hurt Madkins's case.   A reasonable lawyer could have concluded that the presence of another child in the courtroom who had been engaged in commercial sex acts likely would not have helped Madkins.   Trial counsel cannot be faulted for not wanting to summon this witness that further highlighted Madkins's association with child prostitution.

---

[12] Madkins anticipates that Alma O. would have testified that Madkins did not take any of her prostitution proceeds from her, and that this somehow proves he was not a pimp.  Motion to Vacate at 10.  Not only is this legally irrelevant, given that neither 18 U.S.C. § 1591(a)(1) nor 18 U.S.C. § 2423 require a defendant to take money from the victim, but Alma O.'s testimony would have done nothing to rebut the allegations of Madkins's conduct toward A.L. and M.M.

Madkins has failed to demonstrate either that trial counsel was deficient in pursuing a trial strategy focused on discrediting the victims, or that counsel could have done anything differently that would have actually changed the outcome of his trial.

### 4. Ground Four:  Denial of the Right to Testify

In Ground Four, Madkins contends his attorneys rendered ineffective assistance by "forcing" him to waive his right to testify.  Motion to Vacate at 12-13.  A criminal defendant's testimony is "unique and inherently significant."  Nichols v. Butler, 953 F.2d 1550, 1553 (11th Cir. 1992).  While the right is "often framed as the right to testify," however, "it is more properly framed as a right to choose whether to testify."  United States v. Hung Thien Ly, 646 F.3d 1307, 1313 (11th Cir. 2011).

Here, the record amply demonstrates that the Court advised Madkins of his right to testify, that his attorneys consulted with him regarding the matter, and that Madkins elected not to testify:

> THE COURT:        Mr. Madkins, given that disclosure by the government, I want to talk to you for a moment.  I mentioned this to you once before, but you do have the right to testify in this case.
>
> MADKINS:          Yes ma'am.
>
> THE COURT:        And you also have the right not to testify.
>
> MADKINS:          Yes ma'am.
>
> THE COURT:        That is your decision and can be made only by you. you should certainly confer with your attorneys and seek their advice, but ultimately you are the – as my parents used to say to me, you're the interested party, and so you make that decision yourself.

|  | Do you understand that, sir? |
|---|---|
| MADKINS: | Yes ma'am, I do. |
| THE COURT: | And if your lawyer announces rest and you don't get up and testify or you don't notify him, let me know in someway [sic], I'm going to assume that you decided not to testify. |
|  | Is that fair? |
| MADKINS: | Yes ma'am, that is. |
| THE COURT: | So if he says – he or Ms. Yazgi – I don't know who it will be – one of them stands up and announces rest and you wanted to testify and they haven't put you on the stand, I want you to tell me that. |
|  | Will you do that? |
| MADKINS: | I will.  Thank you. |

Trial Tr. Vol. IV at 6-7.  The following day, the Court asked Madkins if it was his decision

to not testify, and he answered affirmatively:

|  |  |
|---|---|
| THE COURT: | All right.  Mr. Madkins, is it your decision, sir, not to testify? |
| MADKINS: | Yes ma'am, it is. |
| THE COURT: | And you talked to your attorneys about that and you made the decision yourself? |
| MADKINS: | Yes, I did. |
| THE COURT: | And I just want you to assure me that you understand that you do have the right to testify, sir. |
| MADKINS: | Yes ma'am, I understand. |

32

Trial Tr. Vol. V at 5.  Thus, Madkins knowingly, freely, and voluntarily waived his right to testify, and told the Court that he freely waived his right to testify.  The record refutes Madkins's claim that his attorneys "forced" him to waive the right to testify.

### 5. Ground Five: Ineffective assistance for failing to call a prostitution expert

Next, Madkins contends that trial counsel gave ineffective assistance by failing to call a "prostitution expert" on his behalf.  This "expert," according to Madkins, would have testified that Madkins's practice of taking 50% or less of A.L.'s and M.M.'s earnings was inconsistent with being a pimp.  Motion to Vacate at 14-15.

Assuming Madkins's purported prostitution expert would have testified as Madkins suggests, Madkins fails to show how calling a prostitution expert would have created a reasonable probability of his acquittal.  See Strickland, 466 U.S. at 694.  No part of 18 U.S.C. § 1591 or 18 U.S.C. § 2423 requires that the defendant be a "pimp," or take any particular percentage of an underage victim's income from prostitution.  Any testimony from this supposed "prostitution expert" would have been irrelevant to the charged offenses, and thus, would not have affected the outcome of Madkins's trial.  As such, it was not unreasonable for counsel to not call a "prostitution expert" given the irrelevance of the testimony that Madkins claims this "expert" would have provided.

6. **Ground Six:  The government violated <u>Brady</u>, <u>Giglio</u>, and the Jencks Act by withholding the criminal history records of the victims from Madkins**

Madkins contends that the government violated the Jencks Act, <u>Brady v. Maryland</u>[13], and <u>Giglio v. United States</u>[14] by failing to disclose that: (1) A.L. was allegedly under the influence of drugs and alcohol while testifying at trial, (2) there was an "active warrant" for M.M. "for a serious, violent sexual crime," (3) A.L. and M.M. were members of the "Bloods" gang, (4) A.L. had a criminal history as a prostitute, and (5) A.L. and M.M. received reduced or eliminated parole and probation obligations in other cases.  Motion to Vacate at 16; Supporting Memorandum at 24-26.

### a.  Jencks Act

Madkins asserts that the government violated the Jencks Act by not disclosing certain witness statements allegedly in its possession.  The Jencks Act, 18 U.S.C. § 3500(b), provides that after a witness testifies a court shall, on motion from a defendant, order the government to produce any witness statement in the government's possession that relates to the subject matter as to which the witness testified.  A statement includes (1) any written statement by the witness that was signed or otherwise adopted by him, (2) a "stenographic, mechanical, electrical, or other recording" or "transcript thereof, which is a substantially verbatim recital of an oral statement"; or (3) "a statement… made by said witness to a grand jury."  18 U.S.C. §

---

[13] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (the government must disclose all exculpatory evidence that is material either to guilt or punishment).
[14] <u>Giglio v. United States</u>, 405 U.S. 150 (1972) (the government must not knowingly use false or perjured testimony, and it must correct testimony subsequently discovered to be false).

3500(e).  Here, Madkins fails to identify what, if any, Jencks statements the government failed to disclose.  Accordingly, this claim fails.

### b.  **Brady** Claim

Consistent with the teachings of Brady, 373 U.S. at 87, the government must disclose exculpatory evidence in its possession to a defendant.  A defendant seeking to establish a Brady violation must show that: (1) the government possessed evidence favorable to the defendant; (2) the defendant neither possessed the evidence nor could he have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) had the government disclosed the evidence, there is a reasonable probability that the proceedings would have turned out differently.  United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989) (citations omitted).

Madkins points to no evidence supporting his claim that the government withheld exculpatory evidence, or that if it did, that he did not already know it.  Madkins, for instance, provides no support for his claims that A.L. and M.M. are members of "the Bloods," or for his bare allegation that A.L. testified under the influence of drugs or alcohol.  Indeed, the Court observed A.L.'s testimony and noted nothing unusual.  Nor does Madkins point to any evidence indicating that M.M. had an "active warrant" for her arrest for allegedly biting off a man's penis, see Motion to Vacate at 16, or that A.L. had a criminal history involving prostitution.

In its Response, the government states that it did provide the defense with A.L.'s criminal record, reflecting that A.L. once took money from her mother and ran away from home, and further states that it is unaware of any arrest warrant for M.M., or that

the victims were secretly members of "the Bloods."  Response at 27; see also Trial Tr.

Vol. II at 106 (defense establishing that A.L. ran away from home).

"A petitioner is not entitled to an evidentiary hearing… when his claims are

merely conclusory allegations unsupported by specifics or contentions that in the face of

the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir.

1991) (emphasis in original) (internal quotations and citation omitted).  In support of a

motion to vacate, a petitioner must proffer credible and specific evidence entitling him to

relief.  See Drew v. Dep't of Corr., 297 F.3d 1278, 1293 n. 7 (11th Cir. 2002) ("clear

precedent [establishes] that such allegations are not enough to warrant an evidentiary

hearing in the absence of any specific factual proffer or evidentiary support.").  Madkins

has utterly failed to demonstrate that the government possessed and suppressed any of

this information, that this information actually exists, or that if it did, he was not aware of

it before the government was.  Consequently, he has failed to make even a prima facie

case of a Brady violation.

### c.  Giglio Claim

Madkins next contends that the government violated its obligation under Brady

and Giglio by not disclosing that A.L. testified under the influence, or that A.L. and M.M.

received reductions in the terms of their probation in exchange for their testimony

against Madkins.  Supporting Memorandum at 27.  The nondisclosure of impeachment

evidence bearing on a witness's credibility falls within the Brady rule.  Giglio, 405 U.S. at

153-54.  In order to establish a Giglio violation, a petitioner must demonstrate that the

prosecutor knowingly used perjured testimony, or failed to correct what the prosecutor

subsequently learned was false testimony.  <u>Brown v. Head</u>, 272 F.3d 1308, 1317 (11th Cir. 2001) (citations omitted).

In support of this claim, Madkins alleges generally that A.L. and M.M. lied, but he fails to identify what, if any, falsehoods they told.  Madkins has further failed to point to any evidence that the government <u>knowingly</u> used false testimony.  Moreover, he has no support for the claim that A.L. and M.M. received plea agreements.  <u>See</u> <u>Hays v. Alabama</u>, 85 F.3d 1492, 1499 (11th Cir. 1996) (the mere lack of prosecution is insufficient to support an inference of a plea agreement).  In sum, Madkins's claims are wholly speculative and not supported by any evidence.  As such, Madkins has failed to demonstrate even a <u>prima</u> <u>facie</u> case of a <u>Giglio</u> violation.

**7.  Grounds Seven and Eight: Trial counsel and appellate counsel rendered ineffective assistance by failing to challenge the constitutionality of 18 U.S.C. §§ 1591 and 2423 as applied**

   **a.  Congress' Commerce Clause authority and the requirement of a "federal nexus"**

Madkins contends that counsel were ineffective for failing to argue that 18 U.S.C. § 1591, as applied in his case, unconstitutionally punishes "innocent travel" because, at the time he traveled with A.L. and M.M. from Virginia to Florida, he had no intention of prostituting the girls.  <u>See</u> Motion to Vacate at 17-18.  Rather, Madkins claims they intended to come to Florida on vacation, and only after Madkins's friend in Jacksonville unforeseeably ejected them from his home did the girls resort to prostitution.  <u>See</u> <u>id.</u>  In other words, Madkins argues that the government failed to establish the requisite federal nexus because he and the minors did not move in interstate commerce with the

intent to engage in commercial sex acts.  In light of this, Madkins argues that counsel rendered ineffective assistance by failing to raise this issue.

With respect to 18 U.S.C. § 2423(a) – making it a crime to transport a minor in interstate commerce with the intent to have the minor engage in prostitution or any other criminal sexual activity – Madkins similarly contends that the statute is unconstitutional as applied to him.   Madkins asserts that the government's theory that he would transport minors across state lines to have them view pictures of his genitalia, in violation of Florida Statute section 800.04(7), when he could have shown them the same pictures in Virginia, is absurd.  Motion to Vacate at 19-20.  Madkins thus claims that § 2423(a) is unconstitutional as applied in this case because the government's case failed to establish a connection between the illicit sexual conduct and the interstate travel.  Id.

Congress has the power to regulate three broad categories under its commerce clause power: (1) the channels of interstate commerce; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) those activities substantially affecting interstate commerce.  United States v. Lopez, 514 U.S. 549, 558-59 (1995). Notably, the Supreme Court has observed that "'the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer in question.'"  Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 256 (1964) (quoting Caminetti v. United States, 242 U.S. 470, 491 (1917)).  Both 18 U.S.C. § 1591 and 18 U.S.C. § 2423, which criminalize the

38

transportation of minors across state lines with the intent to have the minors engage in some kind of sexual conduct, implicate Congress' authority to prevent the immoral or injurious use of the channels of interstate commerce, as well as its authority to regulate the instrumentalities of interstate commerce, i.e. persons moving interstate.

Madkins's claim that a conviction for violating § 1591 punishes "innocent travel" because he did not intend to prostitute the minors when he left Virginia, and thus, that the government failed to establish a federal nexus, is refuted by the record. A recorded phone conversation between Madkins and Sherri Majette reflected that Madkins had told Majette he intended to prostitute the girls in Florida before ever leaving Virginia. Madkins told Majette, "Remember, I told you I was going to try to go down to Florida and work some whores out of here." Trial Tr. Vol. III at 179, 182; Gov't. Ex. 30. The government presented evidence that Madkins prostituted the underage girls in Virginia, that he prostituted the girls in Florida, and that he told Majette that he intended to take the girls to Florida to prostitute them there. Trial Tr. Vol. II at 62, 156-57, 197-200. Madkins bought the minors' tickets on a commercial bus line and escorted them from Virginia to Florida. The jury concluded that Madkins used fraud and deceit to make the girls believe he was a successful drug dealer and that the three could live happily ever after in Florida off his drug proceeds. The government also produced evidence that Madkins told the girls they would no longer have to be prostitutes in Florida, despite having told his friend that he was going to Florida to work them in Florida. Trial Tr. Vol. II at 23-24, 194; Trial Tr. Vol. III at 182. Both A.L. and M.M. testified that they would not have gotten on the bus to Florida with Madkins had they known that he intended for

them to carry on prostituting in Florida.  Trial Tr. Vol. II at 26, 58, 110, 152, 199.

Nothing in this record supports a finding that Madkins's travel to Florida with A.L. and

M.M. was "innocent."  Rather, the evidence, both direct and circumstantial, amply shows

that Madkins entered the channels of interstate commerce with the minors with the

intent beforehand to have them engage in commercial sex acts, in violation of 18 U.S.C.

§ 1591.

Moreover, the government could establish the requisite federal nexus for a

violation of 18 U.S.C. § 1591 through means other than the transportation of minors

across state lines with the specific intent to have them engage in commercial sex acts.

In United States v. Evans, 476 F.3d 1176 (11th Cir. 2007), the Eleventh Circuit Court of

Appeals held that the Trafficking Victims Protection Act of 2000 (TVPA), of which §

1591 is a part, creates a comprehensive regulatory framework designed to address the

aggregate economic impact of human trafficking on interstate and foreign commerce,

particularly the trafficking of women and children in the sex industry.  Id. at 1178-79.

Thus, the court held that § 1591 could reach a defendant whose own conduct, though

confined to Florida, would impact interstate commerce in the aggregate through his use

of hotels that served interstate travelers and condoms manufactured out-of-state.  Id. at

1179-80.  In doing so, the Court acknowledged that the defendant's own contribution to

the national or international market of trafficking children for sex acts was trivial, but that

such acts nonetheless contributed to the market that Congress's comprehensive

scheme seeks to stop.  Id. at 1179.

Here, the government produced abundant evidence establishing the connection between Madkins's activities and interstate commerce. The managers of several of the hotels from which Madkins prostituted A.L. and M.M. testified that they derived substantial business from interstate travelers. Trial Tr. Vol. II at 216 (Virginia Fort Eustis Inn manager testified that the hotel receives out-of-state guests); id. at 265-66 (Virginia Quality Suites hotel manager testified that 70% of the hotel's guests come from out-of-state); Trial Tr. Vol. III at 9-10 (Jacksonville Comfort Inn Suites hotel manager testified that the hotel's franchise is in Maryland, and 45-60% of the hotel's guests come from out-of-state); id. at 13-14 (Jacksonville Motel 6 manager testified that the hotel's corporate headquarters is in Texas, and 10-20% of its guests come from out-of-state); id. at 21-22 (Jacksonville Embassy Suites manager testified that the hotel has primarily out-of-state guests); id. at 27-28 (Ramada Inn manager testified that the hotel's franchise is located in New Jersey, and 30-40% of the hotel's business is from out-of-state guests). The government also introduced evidence that the brand of condoms Madkins provided to the minors (LifeStyle) were manufactured and transported in interstate and foreign commerce. Id. at 60-61 (employee of Ansell Healthcare testified that the condoms are manufactured in India, Thailand, and Malaysia, shipped to the company's facility in Dothan, Alabama, and distributed from there throughout the United States). Thus, the government provided sufficient evidence connecting Madkins's activities with interstate and foreign commerce to sustain a conviction under 18 U.S.C. § 1591. See Evans, 476 F.3d at 1178-80. Because there is no merit to the argument that there was no federal nexus to support Madkins's conviction for violating 18 U.S.C. §

41

1591, counsel neither performed deficiently, nor prejudiced Madkins in their performance, by not raising this issue.

Madkins also argues that counsel were ineffective in failing to argue that § 2423(a) is unconstitutional as applied to him because the government's theory was absurd.  This argument simply questions the reasonableness of the jury's inferences and verdict rather than call into question the federal nexus.  In making this argument, Madkins focuses on one Florida criminal statute (Florida Statute section 800.04(7)) mentioned in Count Three of the Indictment to the exclusion of the other Florida statutes identifying criminal sexual acts that Madkins intended the victims to perform in Florida, including violations of Florida Statute sections 794.05(1) (sexual activity with a person 16 or 17 years old by one 24 years old or older), 800.04(4) (lewd or lascivious battery, including encouraging a person under age 16 to engage in prostitution), 800.04(5) (lewd or lascivious molestation), and 800.04(6) (lewd or lascivious conduct).  Indictment at 2.

To the extent Madkins argues that counsel should have challenged the reasonableness of the jury's verdict, such a claim is without merit.  A jury verdict will not be overturned "[i]f the evidence fairly supports a verdict of guilty, such that a reasonable jury could find the defendant guilty beyond a reasonable doubt."  United States v. Sellers, 871 F.2d 1019, 1021-22 (11th Cir. 1989).  Here, ample evidence demonstrated that Madkins transported the minors across state lines with the intent to continue sexually abusing them in Florida, just as he had in Virginia.  The government presented evidence that Madkins lured the minors to come with him to Florida with tales of living luxuriously off of drug proceeds; that he purchased the minors' bus tickets from Virginia

to Florida under fake names, and then escorted them across state lines.  A.L. and M.M.

testified that Madkins continued having sex with them in Florida just as he had in

Virginia, see Trial Tr. Vol. II at 51-52, 80-82, 126, 143-44, 165, and that  Madkins

continued prostituting them out of hotels in Florida, just as he had in Virginia, see id. at

62, 156-57, 197-200.  The government presented evidence that Madkins posted nude

pictures of the girls on Craig's List in Florida, just as he had in Virginia, see id. at 62, 71,

82-83; PSR ¶ 18, and that he imposed the same rules of prostitution on the girls in

Florida as he did in Virginia, see id. at 64, 89.  And again, Sherri Majette testified that

Madkins had told her that he was going to Florida "to work some whores..."  Trial Tr.

Vol. III at 179, 182.  As such, the evidence amply supported a conclusion that Madkins

transported the girls across state lines, with the specific intent to involve the minors in

criminal sexual activity, sufficient to sustain both the verdict and the "federal nexus"

required for a conviction under 18 U.S.C. § 2423.

Because there was sufficient evidence to allow a jury to conclude that the

government had proven each of the elements of a violation of 18 U.S.C. § 2423 beyond

a reasonable doubt, Madkins's counsel neither performed deficiently, nor prejudiced

Madkins by their performance, in not contesting this issue.

### b.  Vagueness

Madkins also contends that counsel rendered ineffective assistance by failing to

argue that 18 U.S.C. § 1591 is unconstitutionally vague because it does not make clear

what a "commercial sex act" is.   Supporting Memorandum at 33.[15]   Challenging a

statute for vagueness is an assertion that "criminal responsibility should not attach

[because] one could not reasonably understand that his contemplated conduct is

proscribed." United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32-33 (1963).   A

statute must "define the criminal offense with sufficient definiteness that ordinary people

can understand what conduct is prohibited and in a manner that does not encourage

arbitrary and discriminatory enforcement." United States v. Awan, 966 F.2d 1415, 1424

(11th Cir. 1992) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)).   If a vagueness

challenge to a statute does not involve the First Amendment, then the analysis must be

applied to the facts of the case. United States v. Duran, 596 F.3d 1283, 1290 (11th Cir.

2010).   Notably, the Supreme Court has instructed that there is a "strong presumption

supporting the constitutionality of legislation." Nat'l Dairy Prods. Corp., 372 U.S. at 32.

One court in Florida has held, "[n]othing about what [§ 1591] proscribes is left to

the imagination.   Instead, the statute clearly articulates precisely what it prohibits."

United States v. Wilson, No. 10-60102, 2010 WL 2991561 *9 (S.D. Fla. 2010).   This

Court agrees.   The statute defines a commercial sex act as a sex act in exchange for

money or some other form of value.   18 U.S.C. § 1591(e)(3).   No reasonable person, at

least under the facts of this case, would have difficulty understanding that § 1591

applies where, as here, one sells the bodies of underage girls in exchange for money.

---

[15] To the extent Madkins is raising this issue on the merits, the claim is procedurally defaulted because it could have been raised on direct appeal, was not raised then, and Madkins has shown neither cause for nor prejudice from the default.   Nevertheless, the Court will liberally construe his pro se filing as raising a claim that counsel gave ineffective assistance for failing to challenge the conviction on vagueness grounds.

As § 1591 is not void for vagueness, Madkins has failed to show either that his counsel performed deficiently in not raising this issue, or that such performance affected the outcome of his case.

### 8. Ground Nine: Counsel rendered ineffective assistance by not challenging the sufficiency of the evidence

In Ground Nine, Madkins argues that counsel gave ineffective assistance because they failed to challenge the sufficiency of the evidence. Motion to Vacate at 21-23. Specifically, Madkins faults counsel for not pointing out various facts to the Court that he says are inconsistent with him being a "pimp," such as the fact that he stayed at "flea bag" motels, rode on a Greyhound bus from Virginia to Florida, and had to eat junk food. Id. at 22.

Even if counsel's alleged failure to challenge the sufficiency of the evidence could be construed as deficient performance, none of the facts that Madkins thinks counsel should have pointed out, such as the fact that he had to eat junk food, travel by bus, or live in low-end motels, undermines any of the elements of 18 U.S.C. §§ 1591 or 2423. Indeed, neither statute requires the accused to be a "pimp," let alone a prosperous "pimp."

When a defendant challenges the sufficiency of the evidence, the Court views the evidence in the light most favorable to the government. United States v. Flanders, 752 F.3d 1317, 1329 (11th Cir. 2014). Additionally, "it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." Id. (citing United States v. Faust, 456 F.3d

1342, 1345 (11th Cir. 2006)).[16]   In the face of testimony from A.L., M.M., and other witnesses that Madkins lured A.L. and M.M. into prostitution with false representations and promises of saving money, moving to Florida, and living luxuriously there; that Madkins knew the girls were minors; that he told the girls they would no longer have to work as prostitutes once they got to Florida, despite telling a friend that he was going to Florida to work them; that Madkins advertised A.L. and M.M. for prostitution; that Madkins transported the minors from Virginia to Florida; that Madkins prostituted the girls to various men in Virginia and in Florida; that Madkins gave rules to the minors on how to be prostitutes; and that Madkins took money from them, there was certainly sufficient evidence to support Madkins's convictions under 18 U.S.C. §§ 1591 and 2423. See Flanders, 752 F.3d at 1330 (evidence that defendant used false promises of lucrative modeling contracts, misled victims into believing he was a female modeling scout, and that victims were under the influence of drugs when they signed release agreements was sufficient to sustain conviction for sex trafficking); United States v. Mozie, 752 F.3d 1271, 1286 (11th Cir. 2014) (evidence that minors told the defendant

---

[16] To obtain a conviction for a violation of 18 U.S.C. § 1591, the government was required to prove the following elements beyond a reasonable doubt: (1) that the defendant knowingly recruited, enticed, harbored, transported, provided, or obtained a person by any means; (2) that the defendant did so knowing that either (a) force, fraud, or coercion would be used to cause the person to engage in a commercial sex act, or (b) the person was under the age of 18 and would be caused to engage in a commercial sex act; and (3) that the offense was in or affecting interstate commerce. See Trial Tr. Vol. V at 51.

To sustain a conviction for a violation of 18 U.S.C. § 2423(a), the government was required to prove the following elements beyond a reasonable doubt: (1) the defendant knowingly transported a person from one state into another state; (2) the person transported was under the age of 18 at the time of the transportation; and (3) the defendant transported the person with the intent that the person transported engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense. See Trial Tr. Vol. V at 53-54.

their true age and that he told two of them to tell men they were 18 was sufficient to sustain conviction for child sex trafficking under 18 U.S.C. § 1591).

As such, this claim lacks merit, and neither Madkins's trial counsel nor appellate counsel rendered ineffective assistance by not raising a frivolous argument.

**9. Grounds Ten and Eleven:  Counsel failed to challenge an indictment that did not allow the jury to consider a "travel" offense under 18 U.S.C. § 2423(b) rather than a "transport" offense under 18 U.S.C. § 2423(a)**

**a. "Duplicitous" indictment**

In Ground Ten of his Motion to Vacate, Madkins contends that trial and appellate counsel were ineffective in failing to argue that the "indictment was unconstitutionally duplicitous because it charged solely a violation of the 'transport' statute [18 U.S.C. § 2423(a)] when the same facts would also support a 'travel' [18 U.S.C. § 2423(b)] violation." Motion to Vacate at 23.  An indictment is "duplicitous" where "it charges two or more separate and distinct crimes in a single count." United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989).  Here, the record reflects that the government did not charge Madkins with a "travel" violation of 18 U.S.C. § 2423(b). See Indictment, generally.  What Madkins seems to be arguing is exactly the reverse: that the jury should have been able to consider two offenses, i.e. violations of §§ 2423(a) and (b), where only one of the two crimes was charged.  Framed in this manner, this claim is the same as Ground Eleven, in which Madkins argues that the jury should have been able to consider a "travel" offense under 18 U.S.C. § 2423(b) as a lesser included offense of transporting a minor across state lines with the intent to violate the criminal sex laws of the destination state, in violation of 18 U.S.C. § 2423(a).

47

Madkins is incorrect that a "travel" offense under § 2423(b) is a lesser included offense of a "transport" violation under § 2423(a).  In <u>United States v. Weingarten</u>, 713 F.3d 704 (2d Cir. 2013), the Second Circuit Court of Appeals addressed this very question and held that travel with intent to engage in illicit sexual conduct with a minor was not a lesser included offense of transporting a minor with the intent that the minor engage in criminal sexual activity, and thus, a defendant's conviction for both a "travel" offense and a "transport" offense for the same transaction did not violate the Double Jeopardy clause.  <u>Id.</u> at 707-09.  The Second Circuit Court of Appeals applied the test outlined in <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932), which requires a court to examine the elements of two offenses and determine whether each offense contains an element that the other does not.  <u>Weingarten</u>, 713 F.3d at 708 (citations omitted).  The court in <u>Weingarten</u> determined that a "travel" offense, in violation of § 2423(b), requires an element of proof that a "transport" offense in violation of § 2423(a) does not.  The court explained that "travel" requires a <u>defendant</u> to personally move from one location to another with the specific intent to personally engage in sexual conduct with a minor.  <u>Id.</u> at 709.  A "transport" offense does not require the defendant to "travel" at all because one could "transport" a minor without accompanying them.  <u>Id.</u> Additionally, a "transport" offense does not require that the defendant intend on personally engaging in sexual conduct with the minor.  <u>Id.</u>  Conversely, a "transport" offense also involves an element of proof that a "travel" offense does not, which is the moving or causing a minor to move interstate.  <u>Id.</u>  Thus the court decided that a

"transport" offense under § 2423(a) is an entirely distinct crime from a "travel" offense under § 2423(b).

Weingarten's reasoning is persuasive, and the Court adopts that reasoning and rejects Madkins's claim that the jury should have been able to consider a "travel" offense, under § 2423(b), as a lesser included offense of "transporting" a minor under § 2423(a).  The two offenses are entirely separate.  Given that a "travel" offense requires elements of proof that a "transport" offense does not, it follows that a "travel" offense in violation of § 2423(b) cannot be considered a lesser included offense of a "transport" violation under § 2423(a).  As a result, counsel did not provide professionally deficient or prejudicial assistance by not arguing that the jury should have been allowed to consider a "travel" crime as a lesser included offense of the "transport" violation.

### b. Multiplicity

Madkins also contends in his Supporting Memorandum that trial and appellate counsel were ineffective because they failed to argue that his indictment for two counts of violating 18 U.S.C. § 1591 was multiplicitous.  Supporting Memorandum at 29-30.  The government charged Madkins with one violation of § 1591 for each victim, A.L. and M.M.  Indictment at 1-2.  Indictment for a criminal act perpetrated against more than one victim is not multiplicitous where, as here, the government must provide – and did provide – evidence separately establishing violations of 18 U.S.C. § 1591 as to each victim.  See United States v. Jones, 2007 WL 2301420 at *9-10 (N.D. Ga. July 18, 2007) (sustaining multiple convictions for violating 18 U.S.C. § 1591(a) where multiple victims were involved because Congress unambiguously made each "person" the

49

allowable unit of prosecution); see also United States v. Cameron, 84 F. Supp. 289, 290 (S.D. Miss. 1949) (an assault on two victims constitutes two separate and distinct crimes because each offense required different evidence, as to each victim, to sustain the conviction).

Here, Madkins's conduct underlying Counts One and Two, such as prostituting A.L. and M.M. to different clients, having sex with A.L., having sex with M.M., holding A.L. in a chair for twenty minutes (relevant to the use of force or coercion), and pushing M.M. to the ground (same), involved acts directed toward two different victims at different time frames.  Consequently, this claim lacks merit, and neither trial counsel nor appellate counsel provided ineffective assistance by not arguing that charging Madkins with separate violations of 18 U.S.C. § 1591 for each victim was multiplicitous.

**10. Ground Twelve: The Court gave confusing jury instructions**

Madkins contends that the jury instructions in his case were confusing.  District courts have a great deal of discretion in how they choose to phrase jury instructions, so long as the instructions accurately represent the law.  See United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995).  Importantly, instructions are to be evaluated as a whole to determine whether they are accurate statements of the issues and the law. United States v. Weissman, 899 F.2d 1111, 1113 (11th Cir. 1990) (citations omitted).

Madkins fails to identify any inaccuracies in the Court's jury instructions.  Rather, he bases his claim on (1) an affidavit from a high school civics teacher that his students found the instructions confusing, and (2) the fact that the jury had a question as to whether it could convict Madkins of Count One but not Count Two, Trial Tr. Vol. V at 65.

First, jurors are not high school students.   Second, the Court gave a clarifying instruction that the jurors could convict Madkins on both Counts One and Two, either count, or neither count.   Id. at 68-70.   Madkins did not object to the Court's proposed instructions as to the substantive offenses, neither party objected to the Court's final jury instructions, and the jury took less than twenty minutes to deliberate subsequent to the Court answering the question.   See Trial Tr. Vol. IV at 52-57; Trial Tr. Vol. V at 65, 67, 68, 71-74.   Madkins has failed to substantiate his conclusory allegation that the Court's jury instructions were unclear to an unconstitutional degree.

### 11. Ground Thirteen: The court and trial counsel failed to ensure that the jury's verdict was unanimous

The record refutes Madkins's claim that his attorneys and the Court failed to ensure that the jury's verdict was unanimous.   Preliminarily, the Court notes that the Court instructed the jury that any verdict it reached must be unanimous.   Id. at 59-60. More importantly, the jury foreperson expressly declared that the jury had reached its conclusions unanimously when it announced the verdict as to each count.   Id. at 72-74. Additionally, the Court polled each juror individually to ensure that the announced verdict was each juror's own verdict, and each juror affirmed that it was.   Id. at 74-75. Thus, Madkins's claim is affirmatively refuted by the record.

### 12. Ground Twenty: The court improperly calculated restitution, which counsel failed to challenge

A motion to vacate pursuant to 28 U.S.C. § 2255 cannot be used to challenge a court's award of restitution.   Mamone v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009).   Thus, the Court will not entertain this claim.   Additionally, counsel did challenge

the restitution award.  (See Crim. Doc. 96, Sentencing Tr. at 15).  Therefore, this claim would also be affirmatively refuted by the record.

13. **Ground Twenty-One:  The government's failure to charge A.L. and M.M. with criminal violations creates injustice**

In Ground Twenty-One, Madkins contends that the government's decision not to charge his victims with criminal violations for the very conduct he manipulated them into performing creates injustice.  A.L. and M.M. were both under the age of 18 when Madkins recruited them and took them from Virginia to Florida to engage in illicit and commercial sexual activities.  Title 18, United States Code, Sections 1591 and 2423 were both designed to protect minors like A.L. and M.M. from sexual exploitation by people like Madkins.  A.L. and M.M., rather than being perpetrators, fell into the very class of persons protected by these statutes.  Madkins provides no authority or support for his claim that the government's decision not to prosecute the minors creates "injustice" for him, let alone that the remedy should be vacatur of his conviction or sentence pursuant to 28 U.S.C. § 2255.  Accordingly, this claim lacks merit.

14. **Grounds Fourteen, Twenty-Two, and Twenty-Three: The government and the Court committed errors that cumulatively warrant a new trial and sentencing phase**

Madkins residually claims in Grounds Twenty-Two and Twenty-Three that the government and the Court committed errors that warrant a new trial and sentencing phase, but he does not allege any new errors different from those alleged elsewhere. See Motion to Vacate at 42-43.  Madkins also claims in Ground Fourteen that cumulative error warrants relief under 28 U.S.C. § 2255.  Id. at 29-30.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of a constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation omitted).  However, where there is no error or only a single error, there can be no cumulative error. United States v. Allen, 269 F.3d 842, 847 (11th Cir. 2001).  The Court has determined throughout this opinion that none of Madkins's allegations of error has merit.  Because Madkins has shown no error, let alone a single prejudicial error, he fails to establish cumulative error warranting relief.  Id.

### III.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Madkins seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2). To make this substantial showing, Madkins "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district

53

court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1.  Marvin Leigh Madkins's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DENIED**.

2.   The Clerk shall enter judgment in favor of the United States and against Marvin Leigh Madkins, and close the file.

3.  If Madkins appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not

warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of September, 2014.


MARCIA MORALES HOWARD
United States District Judge


Lc19
Copies:
Counsel of Record
pro se party